UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>ROBERT FERRELL,<br><br>　　　　　　　　Defendant. | NO. CR07-0066MJP<br><br>ORDER ON DEFENDANT'S<br>MOTION TO DISMISS INDICTMENT |

This matter comes before the Court on Defendant's Motion to Dismiss. (Dkt. No.14) Defendant seeks dismissal of his indictment by grand jury, claiming violation by the Government of the attorney-client privilege, and that this constitutes outrageous government conduct. Defendant claims that this alleged misconduct prejudiced the outcome of the grand jury process and warrants dismissal of the indictment. The Court has reviewed Defendant's Motion to Dismiss (Dkt. No.14), the Government's Response (Dkt. No.16), and Defendant's Reply (Dkt. No. 17), and heard oral arguments on the Motion on July 27, 2007. The Court finds that the attorney-client privilege claimed by Defendant actually belongs to his employer, the Federal Aviation Administration ("FAA"). Defendant does not have the right to personally invoke the privilege. Accordingly, the Government's conduct was not outrageous and did not prejudice the outcome of the indictment, and Defendant's motion to dismiss is DENIED.

**ORDER ON MOTION TO DISMISS - 1**

## **Background**

Robert Ferrell is accused of violating several federal statutes. These laws prohibit fraudulent or false statements, and place restrictions on information disclosed or obtained during the contractor bidding process. Mr. Ferrell was employed by the Federal Aviation Administration ("FAA") as a contracting officer who oversaw the bidding process for the Approach Lighting System Foundation ("ALSF") at SeaTac Airport. The contract for the project was awarded to PCL Construction Services, Inc. ("PCL"). Donald B. Murphy Contractors, Inc. ("DBM") was the competing construction firm that did not win the bid. DBM originally submitted the low bid on May 30, 2002, but competing contractors were allowed to submit a revised bid on June 10, 2002. Once again, DBM's bid was the lowest. At this point, the original contract officer on the project was replaced by Robert Ferrell and Vicki Olson. The Government alleges that Mr. Ferrell contacted PCL and informed them that their bid was higher than DBM's and needed to be lowered, as well as informing them of the exact amount of the low bid. PCL lowered its bid and submitted a late bid, claiming "late receipt of a subcontractor bid."

After receiving PCL's new low bid, Mr. Ferrell spoke to two different FAA attorneys, Dwight Williams and Karen Huber. He requested legal advice, asking whether he could award the contract to PCL based on their late low bid, without giving DBM an opportunity to submit a new bid. According to both FAA lawyers, Mr. Ferrell told them that PCL had submitted a low bid because of a late subcontractor bid, and did not mention anything about giving PCL the opportunity to reduce their bid after giving them inside information. Based on their conversations with him, both attorneys advised Mr. Ferrell that he could legally award the contract to PCL.

During the investigation, Mr. Williams and Ms. Huber both talked to federal investigators about their conversations with Mr. Ferrell, and they also testified before the grand jury. They claim that they did so because they did not consider Mr. Ferrell to be a client, and therefore not protected by

**ORDER ON MOTION TO DISMISS - 2**

the attorney-client privilege. The Government did not request an in camera review by the court of the evidence obtained from the attorneys' testimony.

On March 1, 2007, the grand jury returned a seven count indictment against Mr. Ferrell, charging him with conspiracy to violate 41 U.S.C. §§ 423(a) and (e) and 18 U.S.C. § 1001, three counts of procurement fraud, preparation of a false document, willful concealment of material information from an FAA attorney, and willful false statements made to an FAA attorney. The conspiracy count was based on the jury's determination that Mr. Ferrell "'knowingly disclose[d] and obtain[ed] source selection information prior to the award of the ALSF Contract' to provide a 'competitive advantage to PCL' and to 'knowingly and willfully conceal and cover up material facts...'".

Defendant claims that the testimony of the two FAA attorneys was the primary basis for the indictment against him. He also claims that the attorney-client privilege should have protected the communications discussed in their testimony. Defendant claims that the Government's use of this testimony without regard for attorney-client privilege is outrageous government conduct, that it was prejudicial to his case, and that it is within the Court's discretion to dismiss the indictment as a remedy.

## **Analysis**

1. The Attorney-Client Privilege

The attorney-client privilege is a well-established protection grounded in common law, as provided for by Federal Rule of Evidence 501. Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). The privilege protects confidential communications between attorneys and clients made for the purpose of securing legal advice. In Re Lindsey, 158 F.3d 1263, 1267 (D.C. Cir. 1998). It contains eight essential elements: (1) where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in

**ORDER ON MOTION TO DISMISS - 3**

confidence (5) by the client, 6) are at the client's instance permanently protected (7) from disclosure by himself or by legal adviser (8) unless the protection is waived. United States. v. Plache, 913 F.2d 1375, 1379 n.1 (9th Cir. 1990) (citing Matter of Fischel, 557 F.2d 209, 211 (9th Cir. 1977); 8 John Henry Wigmore, Wigmore on Evidence § 2295 at 554 (McNaughton rev. 1961)). The burden of proving that the privilege applies belongs to the party asserting it. Id. at 1379 (citing United States v. Layton, 855 F.2d 1388, 1406 (9th Cir. 1988) (overruled on other grounds)). The privilege is to be construed narrowly by the courts. Id. (citing Weil v. Investment/Indicators, Research & Management, Inc., 647 F.2d 18, 24 (9th Cir. 1981)).

### a. Government Entities

The attorney-client privilege protects entities, such as corporations and government agencies, as well as individuals. Coastal States Gas Corp. v. Dept. Of Energy, 617 F.2d 854, 863 (D.C. Cir. 1980). Although the case law is not extensive, the privilege is generally held to apply to the government in civil litigation. United States v. John Doe, 399 F.3d 527, 532-33 (2nd Cir. 2005) The key issue to be resolved here is how broad the parameters of the privilege are when applied to governmental entities, and whether employees' conversations with attorneys are protected . The Supreme Court has not ruled on the matter. However, it has done so regarding corporate entities, which can be analogized to governmental bodies. See United States v. AT&T, 86 F.R.D. 603, 621 (D.D.C. 1979) (finding the analogy from corporations to be apt). In Upjohn Co. v. United States, the Court held that communications with in-house counsel that were within the scope of an employee's duties and were made for the purpose of securing legal advice are protected by the privilege. 449 U.S. 383, 394 (1981). This applies not only to upper management, but to lower-echelon corporate employees as well. Id. By analogy, the attorney-client privilege is broad enough to cover communications by individual government employees with the agency's attorneys.

**ORDER ON MOTION TO DISMISS - 4**

### b. The Privilege Belongs to the Entity, Not the Individual

Although employee communications with government legal counsel can be protected, the law is not clear on whether the individual employee can invoke the privilege, or if that right belongs only to the agency or government entity. The case law on the issue is minimal, and neither the Supreme Court nor the Ninth Circuit has addressed the issue. Federal Rule of Evidence 501 advises that interpretation of a privilege should be "governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." In criminal cases, the "common law" referred to in the rule is federal common law. United States v. Gillock, 445 U.S. 360, 368 (1980). Although it may not rely on state law in criminal cases, the Supreme Court has looked to factors such as trends in state law and proposed (but not enacted) rules as sources of reason and experience to determine the parameters of a privilege. Trammel v. United States, 445 U.S. 40, 47-50 (1980); Jaffee v. Redmond, 518 U.S. 1, 13 (1996). Proposed Federal Rule of Evidence 503 defined "client" to include public officers and entities, and governmental bodies. Fed. R. Evid. 503(a)(1) (proposed but not enacted). It then provided that the privilege can be claimed by the "client." Fed. R. Evid. 503(c) (proposed but not enacted). It is not clear whether the public officer referred to in the definition includes employees within a government agency, or whether it only refers to a public officer who is represented independently by counsel.

The weight of persuasive authority falls on the side of the Government. It is generally agreed that the privilege belongs to the government agency, and not an individual government employee. "The privilege for governmental entities may be asserted or waived by the responsible public official or body." Restatement Third, Law Governing Lawyers § 74, Comment e. The Restatement contemplates an individual employee as the client only if the attorney "is retained by the agency as separate counsel to represent the personal interests of the employee." Id. at Comment d. The ABA Model Rules of Professional Conduct acknowledge that the identity of the client is less clear when an attorney is

**ORDER ON MOTION TO DISMISS - 5**

1  representing a government entity, but state that usually it is "the government as a whole." ABA Model
2  Rules of Professional Conduct, Rule 1.13, Official Comment (2003).  The few district courts that have
3  addressed the issue have come to the same conclusion.  <u>Clavir v. United States</u>, 84 F.R.D. 612, 614
4  (S.D.N.Y. 1979) (finding that the privilege did not apply to FBI agents who were interviewed by
5  Dept. of Justice attorneys investigating actions taken in the course of agents' duties); <u>Lockyer v.</u>
6  <u>Superior </u>Court, 83 Cal.App.4th 387, 399 ( Cal.App. 4 Dist. 2000) (designating the District Attorney's
7  Office, not the individual prosecuting attorney, as the proper holder of the privilege); <u>Edwards v.</u>
8  <u>Mass. Bay Transp. Authority</u>, 2000 WL 1786326 at *4 (not reported in N.E.2d) ("When an
9  organization is an attorney's client, the attorney may be able to confer with an organization's employee
10 within the umbrella of the organization's attorney-client privilege, but that privilege belongs to the
11 organization, not the employee."); <u>Whitlow v. Martin</u>, 2006 U.S. Dist. LEXIS 60943 at *7 (not
12 reported in F.Supp.2d) (state employees who sought legal advice from the Attorney General did not
13 have the authority to assert the privilege, which belongs to the Office of the Governor).

14    In addition, several Circuit Courts have held that in a corporate context, the privilege belongs
15 to the corporation and is not available to individual employees. <u>See, e.g.</u>, <u>In Re Bevill, Bresler &</u>
16 <u>Shulman Asset Mgmt. Corp.</u>, 805 F.2d 120, 125 (3d Cir. 1986) (holding that a corporate official may
17 not invoke the privilege when it has been waived by the corporation); <u>Citibank, N.A. v. Andros</u>, 666
18 F.2d 1192, 1195 (8th Cir. 1981) (stating that the power to assert the privilege belongs to management
19 and not to individual officers).  Judge Rothstein from the Western District of Washington agreed,
20 stating that courts have found that "when a corporate agent, acting in his or her official capacity,
21 consults counsel, the privilege belongs to the corporation and not to the individual officer." <u>Odmark v.</u>
22 <u>Westside Bancorp., Inc.</u>, 636 F.Supp. 552, 555 (W.D. Wash. 1986).

23    The attorney-client privilege is intended to encourage frank discussion between clients and
24 attorneys.  <u>Upjohn</u>, 449 U.S. at 389.  An attorney that receives full disclosure of all the material facts
25
26 **ORDER ON MOTION TO DISMISS - 6**

from a client is better able to give accurate and comprehensive legal advice. In this case, applying the privilege would bring about the opposite result. The FAA attorneys are employed to give legal advice to employees in order to ensure that the agency is acting in compliance with federal laws and regulations. Mr. Ferrell is accused of giving false information to the FAA attorneys in order to legitimize actions taken on his own behalf that directly contradicted federal law and agency policy.

The attorney-client privilege should not be construed in such a way that it allows individual employees to consult with the agency attorney in furtherance of a crime, and then hide their fraudulent or illegal actions by invoking the agency's privilege. Defendant points to the proposed "Attorney-Client Privilege Protection Act of 2007," which would potentially expand the protection statutory protections given to attorney-client communications. However, the legislature clearly did not intend to broaden the privilege so far as to protect illegal activity. Section 2(9) of the proposed legislation provides that "attorney-client privilege, work product doctrine, and payment of counsel fees shall not be used as devices to conceal wrongdoing or to cloak advice on evading the law." This Court agrees with the conclusions of other federal courts that have ruled on the matter and finds that the attorney-client privilege belongs to a government entity and not to its individual employees.

### c. Mr. Ferrell's Communications with the FAA Attorneys

Mr. Ferrell's conversations with both FAA attorneys meet the Ninth Circuit requirements for the attorney-client privilege. He was seeking legal advice from a professional legal advisor about the legal requirements for a particular contracting question. Both parties were acting in their official capacity, Mr. Ferrell as a contract officer and Mr. Williams and Ms. Huber as FAA attorneys. Defendant asserts that he was communicating with an expectation of confidentiality. Because these conversations fit within the requirements of the privilege, the client has the right to protect them, unless they are waived.

**ORDER ON MOTION TO DISMISS - 7**

However, Mr. Ferrell is not the true client, and therefore he may not personally invoke the privilege. Defendant has not met his burden of proving his right to personally invoke the attorney-client privilege. The moving party has the burden of proving the applicability of the privilege and the courts are to construe the privilege narrowly. Plache, 913 F.2d at 1379. Defendant has not provided enough persuasive authority to support his assertion that his indictment should be dismissed based on a claimed violation of the attorney-client privilege.

2. Outrageous Government Conduct

Defendant claims that the Government's questioning of the two FAA attorneys during its investigation and its reliance on their testimony constitutes outrageous government conduct because it disregards the attorney-client privilege. The standard for a claim of outrageous government conduct is a "deliberate intrusion into the attorney-client relationship" that causes actual and substantial prejudice. United States v. Haynes, 216 F.3d 789, 796 (9th Cir. 2000) (en banc). The Ninth Circuit proposes two remedies for this type of violation. Defendant requests dismissal of the indictment, an extreme remedy which is disfavored and is reserved only for the most egregious cases. Id. The more common remedy is suppression of the evidence at trial, which was the remedy chosen by the court in Haynes.

Both FAA attorneys have stated that the FAA chose not to assert its privilege regarding their communications with Mr. Ferrell. Although it is the client's right to waive the privilege, and not the attorney's, an attorney can speak for an entity on behalf of its senior management. Defendant argues that, as a manager, he has the authority to invoke the privilege. But Mr. Ferrell was not in a position to direct FAA agency policy, and can not speak for the agency. Because the privilege was purportedly waived and has not been invoked by the legal "client," the Court does not need to examine the Government's handling of the evidence for the purposes of this motion.

**ORDER ON MOTION TO DISMISS - 8**

## **Conclusion**

Defendant's primary argument, that Mr. Ferrell's communications with the FAA attorneys are entitled to protection by the attorney-client privilege, is not adequately supported. The attorney-client privilege applies to the government agency that employs the attorneys to represent it, but it can not be invoked by individual employees. The FAA did not invoke the privilege on Mr. Ferrell's behalf. Therefore, Defendant's motion to dismiss is DENIED.

The clerk is directed to provide copies of this order to all counsel of record.

Dated: August 1, 2007

                                            s/ Marsha J. Pechman
                                            Marsha J. Pechman
                                            United States District Judge

**ORDER ON MOTION TO DISMISS - 9**